UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 5:21-CR-01868 |
| SIMON MEDINA III | § § | |

## FACTUAL STATEMENT IN SUPPORT OF PLEA AGREEMENT

The United States of America, by and through Jennifer B. Lowery, Acting United States Attorney for the Southern District of Texas and José Angel Moreno, Assistant United States Attorney, and the defendant, SIMON MEDINA III and the defendant's counsel, hereby stipulate as follows:

I.

If this case proceeded to trial, the United States of America would prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the Defendant's guilt:

II.

On July 6, 2020, the Joint Intake Center (JIC) in Washington, DC received an email which reported that on **July 4, 2020, Simon MEDINA, III. (MEDINA)** allowed entry to a subject of a TECS record and took what appeared to be a small plastic bag from the same subject. The JIC notified CBP Office of Professional Responsibility (OPR) regarding the incident. According to the JIC, **MEDINA** allowed **Jose Roberto GRANADO (JGRANADO)** to enter at the Juarez-Lincoln Bridge 2 without referring him to secondary inspection based on a Homeland Security Investigations (HSI) TECS hit. The TECS hit altered CBPOs that **JGRANADO** might be

smuggling contraband commingled with merchandise known as "encargos",[1] and requested that the encargos be inspected.

On **August 2, 2020**, OPR received information from a CBP Supervisor that **MEDINA** had released a vehicle containing encargos without inspection. The supervisor added that the person released, **Pablo GRANADO (PGRANADO)**, also had an active TECS hit for secondary inspection. The supervisor also stated that **MEDINA** was not assigned to primary inspections and had taken it upon himself to open a primary lane to allow **PGRANADO** to smuggle unknown goods without inspection. CBP OPR confirmed via POE surveillance video that **MEDINA** allowed **JGRANADO** and **PGRANADO** to smuggle goods into the United States without referring them to secondary inspection as instructed by the TECS hits. OPR also discovered that **MEDINA** allowed two other vehicles linked to **JGRANADO** to make entry on July 4, 2020 and August 2, 2020. One vehicle was driven by **Rafael ALVAREZ (ALVAREZ)**. Queries in CBP databased revealed that **MEDINA** entered different name variations for the drivers and changed license plate digits in TECS to avoid detection in order to further the smuggling scheme.

On **August 6, 2020** a CBP Supervisor called OPR and advised that **MEDINA** had taken over a Bridge 2 primary lane without authorization. OPR instructed him to monitor **MEDINA**'s activities and to notify CBPOs at secondary to conduct an intensive examination of the previously identified vehicles after they were released by **MEDINA**. As instructed, CBPOs conducted an examination of a red Chevrolet Suburban driven by **PGRANADO**. OPR agents then responded to the bridge.

---

[1] "Encargos" are merchandise brought into the U.S. by someone who does not own the merchandise. CBP prohibits travelers from bringing encargos into the U.S. In the past, travelers have attempted to smuggle narcotics commingled with encargos. CBP previously admonished JGranado not to bring encargos into the U.S.

Upon arrival, OPR agents were advised by CBP that **PGRANADO** had been stopped and that **PGRANADO** still had an active TECS hit. **PGRANADO** was found in possession of undeclared goods including 50 controlled and over the counter medications (54 different packages), 10 beer cartons, and 11 bottles of liquor. CBP informed OPR that **MEDINA** was assigned to Passport Control Secondary (PCS) for that shift. CBPOs assigned to PCS do not conduct primary duties. CBP stated that **MEDINA** left his PCS station and opened a primary lane without authorization. In addition, a SCBPO informed the agents that while he was watching **MEDINA** in the supervisor's office, **MEDINA** stated, "It's an embarrassment. I may lose my job for letting encargos in, just because they fixed my lawnmower."

OPR SAs conducted queries of the vehicles that entered through **MEDINA**'s lane and discovered that **ALVAREZ** had been allowed to enter without inspection a few minutes before **PGRANADO**. OPR, HSI, and LPD conducted a search in the downtown area and located **ALVAREZ**'s vehicle at a parking lot near El Metro Bus Station. LPD approached **ALVAREZ** and asked **ALVAREZ** if he was willing to return to the POE for an inspection, and **ALVAREZ** agreed. A subsequent inspection of the vehicle resulted in the discovery a large number of commercial goods including 13 cartons of beer, 2 cartons of wine coolers, and 1 carton of Jimador new mix.

OPR SAs interviewed **MEDINA**. **MEDINA** stated he was currently assigned to PCS and that his duties did not include vehicle primary processing. **MEDINA** admitted he did not get supervisory approval to do so. **MEDINA** admitted he processed **ALVAREZ** who had commercial merchandise with him. **MEDINA** admitted he was aware that **ALVAREZ** had an active TECS alert, but he disregarded it. **MEDINA** claimed that alerts for commercial violations were not a big deal to him because he was looking for drugs. **MEDINA** admitted he allowed several transporters

with commercial goods to cross through his lane without referring them to secondary. **MEDINA** acknowledged that he was aware that commercial goods were supposed to go through one of the commercial bridges. During a search of **MEDINA**'s phone, agents located a contact for **ALVAREZ**. **MEDINA** confirmed that was the same **ALVAREZ** whom he had allowed to enter. **MEDINA** stated that he had communicated with **ALVAREZ** about repairing **MEDINA**'s pressure washer. **MEDINA** also stated that **ALVAREZ** was going to have some cabinets made for one of **MEDINA**'s relatives, and that **ALVAREZ** had brought some facial scar cream to **MEDINA**'s wife. **MEDINA** admitted that on this date, he had contacted **ALVAREZ** and told **ALVAREZ** which lane **MEDINA** would be in to allow **ALVAREZ** to enter with commercial goods. **MEDINA** admitted he had allowed **ALVAREZ** to enter commercial goods for the past months. He further admitted that he had allowed **PGRANADO** to enter and that **MEDINA** received a text from **ALVAREZ** inquiring if **PGRANADO** could also enter though his lane. **MEDINA** admitted that he knew **ALVAREZ** and the **GRANADOs** worked together. **MEDINA** explained that **MEDINA** would get a call from **ALVAREZ** inquiring if **MEDINA** would be manning a lane to let them in. **MEDINA** further admitted that on more than one occasion he had asked **ALVAREZ** to purchase products for **MEDINA** in Mexico. **MEDINA** admitted that **ALVAREZ** had helped **MEDINA** with the repair of his lawnmower, but **MEDINA** claimed he had paid **ALVAREZ** $25.00 for the repairs. **MEDINA** said he was in contact with **ALVAREZ** once a week in order to allow **ALVAREZ** and the **GRANADOs** to enter with commercial goods. He acknowledged being aware that the three had active TECS alerts.

On August 7, 2020, OPR SAs conducted database queries and obtained video surveillance for all illegal entries by **ALVAREZ**, **JGRANADO**, and **PGRANADO** through **MEDINA**'s primary lanes. The agents located 22 entries between May and August 2020. In each, **MEDINA**

If the Defendant is not a citizen of the United States of America, a plea of guilty may result in removal from the United States, denial of citizenship and denial of admission to the United States in the future. If the Defendant is a naturalized United States citizen, a plea of guilty may result in denaturalization.

This document states the complete and only Plea Agreement between the United States of America and the Defendant, and is binding only on the parties to this Agreement, and it supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing and signed by all parties or on the record in Court. No other promises or inducements have been or will be made to the Defendant in connection with this case, nor have any promises or threats been made in connection with this plea.

### ACKNOWLEDGMENTS:

I have read this agreement and carefully reviewed every part of it with my attorney. If I have difficulty understanding the English language, I have had a person fluent in the Spanish language interpret this agreement to me.

Date: 3-07-22      Defendant: _____

I am the Defendant's counsel. I have carefully reviewed every part of this agreement with the Defendant. I certify that this agreement has been translated to my client by a person fluent in the Spanish language if my client is unable to read or has difficulty understanding the English language.

Date: March 7, 2022      _____
Adriana Arce-Flores
Counsel for Defense

For the United States of America:

Jennifer B. Lowery
Acting United States Attorney

_____
José Angel Moreno
Assistant United States Attorney